CC-1998-734                                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Luis Ghigliotti Arzola<br>      Peticionario<br><br>      v.<br><br>Administración de Servicios Agrícolas<br>      Recurridos | Certiorari<br><br>99 TSPR 189 |

Número del Caso: CC-1998-0734

Fecha: 30/12/1999

Tribunal de Circuito de Apelaciones: Circuito Regional V

Juez Ponente: Hon. Ramón Negrón Soto

Abogados de la Parte Peticionaria: Lcdo. Javier A. Echevarría Vargas

Abogados de la Parte Recurrida: Lcdo. Raymond P. Burgos
                                Lcdo. Rafael A. Vilá Carrión

Materia: Daños Contractuales

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis Ghigliotti Arzola

  Demandante y Peticionario

       v.                              CC-1998-734      Certiorari

Administración de Servicios
Agrícolas

  Demandado y Recurridos

PER CURIAM

San Juan, Puerto Rico, a 30 de diciembre de 1999.

En este recurso el Sr. Luis Ghigliotti Arzola, impugna una sentencia dictada por el Tribunal de Circuito de Apelaciones que revocó una decisión del Tribunal de Primera Instancia. A tales efectos, señala que el Tribunal de Circuito erró al concluir que: tenía jurisdicción para resolver el recurso presentado, bajo el fundamento de que la Administración de Servicio y Desarrollo Agrícola era una agencia del gobierno y; tenía sesenta (60) días para recurrir. Además, aduce que erró dicho foro al resolver que no debió celebrarse la vista en su fondo en el caso de autos

sin la comparecencia de la recurrida. Examinadas las comparecencias ante nos, confirmamos.

I

El Sr. Luis Ghigliotti Arzola contrató con la Administración de Servicio y Desarrollo Agrícola, (en adelante ASDA) para la realización de ciertos trabajos en su finca. A tenor con dicho contrato, ASDA realizó el trabajo. Sin embargo, durante la realización de este se causaron daños a la finca. Por tal razón, Ghigliotti demandó a ASDA ante el Tribunal de Primera Instancia. En su contestación, ASDA planteó como defensa que cuando comenzaron los trabajos Ghigliotti aprobó las obras y la relevó de responsabilidad por los daños reclamados.

Después de ciertos trámites procesales, el Tribunal de Primera Instancia señaló la vista en su fondo para septiembre de 1997. Sin embargo, en julio el abogado de ASDA presentó una moción de renuncia de representación legal, y solicitó que toda notificación futura se le dirigiera exclusivamente al Administrador de ASDA. El tribunal concedió a ASDA un término para contratar un nuevo abogado y reafirmó que la vista en su fondo seguía señalada para septiembre. No obstante, esta orden sólo se notificó al abogado que había solicitado ser relevado, pero no a ASDA.

El día del juicio ASDA no compareció. Tras resultar infructuosas las gestiones del tribunal para comunicarse con ASDA por teléfono, se procedió a celebrar la vista en ausencia de la demandada, situación calificada por las partes y dicho tribunal como una "vista en rebeldía". Desfilada la prueba de Ghigliotti, se declaró con lugar la demanda al concluirse que ASDA ejecutó defectuosamente sus responsabilidades contractuales.

Inconforme con dicho dictamen ASDA apeló al Tribunal de Circuito de Apelaciones y sostuvo que el foro de instancia cometió los siguientes errores: i) dictar sentencia en rebeldía sin notificarle debidamente de la orden y sin apercibirle de las consecuencias de

incumplir la misma y; ii) no desestimar la demanda debido a la existencia de un relevo de responsabilidad, hecho admitido en la misma.

Ghigliotti, por su parte, solicitó la desestimación del recurso de apelación, bajo el fundamento de que el mismo fue radicado fuera del término provisto en la regla 53.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Adujo que por ser ASDA una corporación pública, el término aplicable para presentar la apelación era de treinta (30) días y no el de sesenta (60) días dispuesto para las agencias gubernamentales. Dicho foro apelativo declaró no ha lugar a la referida moción de desestimación al concluir que ASDA era una agencia del gobierno y no una corporación pública.

Posteriormente, el Tribunal de Circuito de Apelaciones revocó el dictamen del foro de instancia. Concluyó que la vista en su fondo celebrada en ausencia de ASDA, sin estar ésta debidamente notificada, era una situación análoga a la figura de la rebeldía. A tales efectos, dicho foro apelativo determinó que se debió notificar a ASDA de la vista y apercibirle de las consecuencias de la no comparecencia.

Inconforme con esta decisión Ghigliotti recurre ante nos aduciendo que erró dicho foro al revocar al tribunal de instancia y al determinar que el recurso se presentó dentro del término apelativo, por ser ASDA una corporación pública y no una agencia.

Acogido el recurso de certiorari presentado, comparece ASDA y aduce que Ghigliotti está impedido de discutir ante nos la determinación del foro apelativo denegando la moción de desestimación. Sostiene que este Tribunal no tiene jurisdicción para revisar la resolución emitida por el Tribunal de Circuito de Apelaciones. En la alternativa, expone que actuó correctamente dicho tribunal al concluir: i) que ASDA es una agencia gubernamental y no una corporación pública y; ii) que el Tribunal de Primera Instancia no debió dictar la sentencia en rebeldía. Estando en posición de resolver, así lo hacemos.

II

De entrada resulta pertinente atender el planteamiento esbozado por ADSA a los efectos de que carecemos de jurisdicción para determinar si la apelación ante el Tribunal de Circuito se presentó a tiempo. En síntesis, ASDA alega que la resolución de dicho foro apelativo, acogiendo el recurso, es final y firme. No le asiste la razón a ASDA.

La determinación de si la apelación ante el Tribunal de Circuito de Apelaciones se radicó en tiempo va dirigida a cuestionar la jurisdicción que tenía dicho foro para atender el caso. Por lo tanto, si dicho tribunal carecía de jurisdicción, por haberse radicado la apelación fuera del término, es una cuestión que puede dilucidarse ante nos. En reiteradas ocasiones hemos señalado que la presentación de un recurso fuera de un término jurisdiccional priva al tribunal de facultad para considerar el mismo, por lo que dicho planteamiento puede hacerse en cualquier etapa. Véase, Pueblo v. Miranda Colón, 115 D.P.R. 511 (1984). No olvidemos que los tribunales apelativos tienen la obligación de examinar la jurisdicción del foro de donde procede el recurso. Véase, Vázquez v. A.R.P.E., 128 D.P.R. 513, 537 (1991).

Por lo tanto, no procede el argumento esbozado por ASDA a los efectos que Ghigliotti está impedido de levantar ante nos el planteamiento de falta de jurisdicción del tribunal apelado.

Examinada la facultad de este Tribunal para atender el planteamiento de Ghigliotti sobre el término aplicable para la radicación de la apelación en el caso de autos, procede que analicemos lo dispuesto en nuestro ordenamiento procesal.

III

La regla 53.1(c) de Procedimiento Civil establece el término para interponer una apelación ante el Tribunal de Circuito de Apelaciones procedente del Tribunal de Primera Instancia. El referido término varia según la clasificación que se le de a la entidad gubernamental de que se trate. A tales efectos, dispone la mencionada regla:

> El recurso de apelación deberá ser presentado en la forma antes dispuesta, dentro **del término jurisdiccional de treinta (30)** días contados desde el archivo en autos de una copia de

la notificación de la sentencia dictada por el tribunal apelado. **En aquellos casos en que el Estado Libre Asociado de Puerto Rico, sus funcionarios o una de sus instrumentalidades que no fuere una corporación pública**, o los municipios de Puerto Rico sean parte en un pleito, el recurso de apelación se formalizará, por cualquier parte en el pleito perjudicada por la sentencia, presentando un escrito de apelación en la forma antes dispuesta y dentro del **término jurisdiccional de sesenta (60) días** contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado. 32 L.P.R.A. Ap. III, R.53.1(c). (Enfasis nuestro)

Por ende, resulta de vital importancia examinar si ASDA es una corporación pública o una agencia gubernamental, ya que los términos para formalizar el escrito de apelación al Tribunal de Circuito varían según se trate de una u otra. De dicha determinación depende si el recurso de apelación interpuesto por ASDA, ante el referido foro apelativo, se presentó dentro del término provisto por la regla.

En Huertas Alicea v. Compañía de Fomento Recreativo, res. el 4 de noviembre de 1998, 98 TSPR 147, al resolver que dicha compañía era una instrumentalidad del gobierno que operaba como una corporación pública, esbozamos los criterios a examinar al determinar si una entidad gubernamental es o no una corporación pública. A tales efectos, analizamos la ley habilitadora de dicha compañía y mencionamos, *inter alia*, los siguiente criterios: 1)poseer ingresos propios; 2) tener autonomía fiscal; 3) contar con una Junta de Directores; 4)si los empleados de la agencia están cubiertos por la Ley de Personal; 5) si los servicios prestados por la agencia, por su naturaleza intrínseca, nunca han sido prestados por la empresa privada; 6) el grado de autonomía administrativa de que goce; 7) si se cobra o no un precio o tarifas por el servicio rendido (precio que debe ser básicamente equivalente al valor del servicio); 8) si los poderes y facultades concedidos en la ley orgánica de la agencia la asemejan fundamentalmente a una empresa privada y; la estructura en sí de la entidad. En dicha decisión reafirmamos que ningún criterio es por sí sólo determinante.

Anteriormente en *J.R.T.* v. *Corporación del Conservatorio de Música*, res. el 20 de marzo de 1996, 140 D.P.R.__ (1996), indicamos que: "[s]i [la agencia] rinde servicios que nunca han sido prestados por empresas privadas, entonces su naturaleza tiende a ser gubernamental más bien que de negocio privado. [...] En cambio, si la instrumentalidad rinde servicios como los que prestan empresas privadas, y lo hace con propósitos lucrativos, su naturaleza tiende a ser la de un negocio privado". Señalamos también que las empresas que operan con fines de lucro obtienen ganancias que provienen de la venta de sus productos a precios que sobrepasan sus costos.

Aplicados los criterios anteriormente esbozados al caso de autos concluimos que ASDA es una agencia gubernamental y no una corporación pública, por lo que el recurso apelativo fue interpuesto en tiempo, al ser aplicable el término de sesenta (60) días provisto por la regla 53.1 de Procedimiento Civil. Veamos.

IV

El Plan de Reorganización Núm. 1 del 4 de mayo de 1994 reestructuró el Departamento de Agricultura estableciendo como sus componentes programáticos y operacionales a: (i) la Administración de Servicios y Desarrollo Agropecuario de Puerto Rico (ASDA);(ii) la Autoridad de Tierras; (iii) la Corporación de Seguros Agrícolas y; (iv) la Corporación para el Desarrollo Rural, 3 L.P.R.A., Ap. V, Art. I *et seq*. El Artículo III de dicho Plan especificó cuales entidades conservarían su autonomía operacional y administrativa. Entre estos no se incluyó a ASDA.[1]

Según el Artículo II del referido Plan, el Secretario de Agricultura es el responsable de ejecutar las funciones del Departamento de Agricultura, 3 L.P.R.A., Ap. V, Art. II. A tales efectos tiene, *inter alia*, las siguientes facultades: a) aprobar los

---

[1] Estos organismos serían los siguientes: la Autoridad de Tierras; la Corporación de Seguros Agrícolas y; la Corporación para el Desarrollo Rural, 3 L.P.R.A., Ap. V, Art. III.

reglamentos administrativos y operacionales a ser adoptados por los componentes del Departamento y; b) **evaluar y coordinar las prioridades** programáticas y **presupuestarias** del Departamento, y de los organismos que lo componen, para lo cual presentará al Gobernador anualmente **una petición presupuestaria para cada uno de los componentes del Departamento.**

Según indica el Artículo IV del Plan de Reorganización, el Secretario de Agricultura tiene **todos** los **poderes** de ASDA, incluyendo el de nombrar un Administrador. Además, se le facultó delegar en el Administrador aquellos poderes y deberes que estime necesarios, **excepto el de reglamentar**, 3 L.P.R.A., Ap. V., Art. IV.

Por virtud del Artículo VII de dicho Plan, (3 L.P.R.A., Ap. V, Art. VII) ASDA está exenta de la "Ley de Personal del Servicio Público de Puerto Rico", 3 L.P.R.A. sec. 1301 *et seq*. Sin embargo, se le garantiza a todos los empleados de carrera los privilegios y sus respectivos status relacionados con cualquier sistema de pensiones, de retiro, o fondo de ahorros y préstamos a los cuales estuvieran acogidos al entrar en vigor el referido Plan, 3 L.P.R.A., Ap. V, Art. VIII.

ASDA fue creada por virtud de dicho Plan, quedando adscrita al Departamento de Agricultura, 3 L.P.R.A., Ap. V, Art. III. A su vez, ASDA quedó constituida por: (a) la Administración de Servicios Agrícolas y; (b) la Administración de Fomento Agrícola. Ambos organismos se fusionaron dentro de ASDA, 3 L.P.R.A., Ap. V, Art. V. Debido a que el Plan de Reorganización transfirió a ASDA los poderes y funciones de dichos organismos, es necesario examinar las leyes orgánicas de éstos.

La Administración de Servicios Agrícolas de Puerto Rico (en adelante A.S.A), al ser creada, quedó adscrita al Departamento de Agricultura por virtud de la Ley Núm. 33 del 7 de junio de 1977, (5 L.P.R.A. sec. 1851 *et seq*.). Aunque A.S.A. funcionaría como una entidad jurídica separada del Estado Libre Asociado de Puerto Rico y sus agencias, instrumentalidades, corporaciones públicas o

subdivisiones políticas, el Secretario de Agricultura tendría **todos** los poderes y determinaría su política pública, 5 L.P.R.A. sec. 1853.

Según dispone el artículo 3 de la mencionada ley, el Secretario, con el consentimiento del Gobernador, nombraría un Administrador, quien desempeñará su cargo a **voluntad del Secretario**. Aunque éste podría delegar en el Administrador, aquellos poderes y deberes que estimará necesarios, el poder de reglamentar no sería delegable, 5 L.P.R.A. sec. 1853.

El propósito de A.S.A fue proveer toda clase de servicios, con o sin subsidios económicos, para promover el desarrollo de las empresas agropecuarias y de la agricultura en general, 5 L.P.R.A. § 1854. A tales efectos, garantizaría al agricultor seguridad en las transacciones comerciales y precios razonables para los productos agrícolas. De igual forma A.S.A podría, *inter alia*:

> 1) Proveer toda clase de servicios necesarios en los procesos de distribución y mercadeo de los productos agropecuarios con o sin subsidios.

> 2) Transferir libre de costo o a un precio menor del costo los productos agrícolas que adquiera, a instituciones gubernamentales, estatales o municipales y a otras entidades con fines no pecuniarios, cuando a su juicio, así lo requiera el interés público.
> 3) Proveer ayuda económica a los agricultores para el pago de seguros agrícolas, gubernamentales o privados, siempre que, a juicio del Administrador o de su representante, el agricultor no pueda pagarlo por sí mismo.
> 4) Realizar o proveer ayuda económica para que los agricultores realicen pruebas de adaptación, desarrollo o compra de maquinaria y equipo necesario o útil para la producción, elaboración o mercadeo de productos agrícolas y fomentar el desarrollo de proyectos agroindustriales.
> 5) Prestar servicios, ayuda técnica y el uso de su propiedad, mueble o inmueble, mediante compensación o sin ella. (5 L.P.R.A. sec. 1854, incisos (g), (i), (k), (l) y (u) respectivamente)

Los fondos necesarios para llevar a cabo los fines de A.S.A. se asignarían **en el Presupuesto General de Gastos del Gobierno** en la partida correspondiente al Departamento de Agricultura, 5 L.P.R.A. § 1864.

Por otro lado, la Administración de Fomento Agrícola, (en adelante A.F.A.) se creó como una **agencia gubernamental**, por virtud de la Ley

Núm. 28 del 5 de junio de 1985, (5 L.P.R.A. § 1833, *et seq.*). Al igual que en el caso de A.S.A., los poderes de A.F.A. serían ejercidos totalmente por el Secretario de Agricultura, 5 L.P.R.A. § 1833. Esta agencia se creó para propiciar la estabilidad del agricultor a través de subsidios e incentivos para realizar prácticas conducentes a una mejor producción agrícola, 5 L.P.R.A. § 1834.


V

Habiendo esbozado los poderes y facultades de ASDA y de los organismos que en ella se fusionaron, nos corresponde ahora examinar, a la luz de los factores esbozados por la jurisprudencia para determinar cuando estamos ante una corporación pública, por qué ASDA ha de ser calificada como una agencia.

En Huertas Alicea v. Compañía de Fomento Recreativo, *supra*, al analizar las facultades de la Compañía de Fomento, destacamos algunas que resultan de particular importancia al momento de determinar si una entidad gubernamental opera como un negocio o empresa privada. Así mencionamos que: "[e]ntre éstas se destacan aquéllas que proveen para un funcionamiento independiente en el área administrativa y en el área fiscal".

Aunque, como mencionamos, ningún criterio es por sí sólo determinante, procedemos a considerar estas facultades teniendo en mente la conjunción de los diversos factores existentes.

En lo referente al ámbito fiscal, un análisis de la ley orgánica de ASDA revela que la misma carece de autonomía fiscal. Los fondos necesarios para llevar a cabo los fines de ASDA se asignan **en el Presupuesto General de Gastos del Gobierno**, 5 de L.P.R.A. 1864. A tales efectos, la prueba en autos refleja que desde 1993 las asignaciones legislativas representan más del 70% del presupuesto de ASDA, alcanzando un 88% de éste en el año fiscal 1997-98. No hay duda de que sin estas asignaciones ASDA no podría cumplir con sus obligaciones.

Como mencionáramos anteriormente, las empresas que operan con fines de lucro obtienen ganancias que provienen de la venta de sus productos a precios que sobrepasan sus costos. Este no es el caso de ASDA, pues la propia Ley Núm. 33 señala que entre sus facultades está el prestar servicios, ayuda técnica y el uso de su propiedad, mueble o inmueble, **mediante compensación o sin ella**, 5 L.P.R.A. sec. 1854. Esto es admitido por el propio Ghigliotti quien advierte en su demanda que: "[l]os servicios que ofrece la demandada son virtualmente imposibles de conseguir a un precio asequible y el demandante no tenía otra posibilidad práctica de contratar servicio con otra persona".[2]

ASDA no cobra un precio equivalente al valor del servicio que presta ya que, su política pública es el estimular el desarrollo de la industria agropecuaria, función que se logra, no vendiendo sus servicios a un precio que sobrepase los costos de adquirirlos, sino transfiriendo los productos agrícolas o servicios mediante compensación o sin ella, si así se requiere. Es por esto que ASDA necesita del subsidio de la legislatura para cumplir con sus obligaciones.

De igual forma puede apreciarse que ASDA carece de autonomía administrativa. Dicha agencia se encuentra bajo el control absoluto del Secretario de Agricultura quien retiene **todos sus poderes**, 3 L.P.R.A., Ap. V, Art. IV. ASDA no tiene una Junta de Directores, sino que es dirigida por un Administrador quien desempeña su cargo a voluntad del Secretario de Agricultura, 3 L.P.R.A., Ap. V, Art. IV.

La limitación a la autonomía fiscal de ASDA se refleja en la Ley orgánica de A.S.A., cuyos poderes y facultades fueron transferidos a la recurrida por virtud del Plan de Reorganización, 3 L.P.R.A., Ap. V, Art. V. Aunque en la sección de poderes generales de dicha ley orgánica se otorgan a A.S.A. una serie de facultades, las mismas están sujetas a lo

---

[2] Esto queda evidenciado por ASDA, quien afirma que "[e]l demandante solicitó servicio de alquiler de maquinaria por el cual pagó un precio nominal de sólo $427.50, considerando que tomó dos días (14 horas), con tres empleados públicos y maquinaria pesada para la remoción del terreno."

que el Secretario de Agricultura disponga. A manera de ejemplo puede destacarse el inciso (b) de dicha sección, 5 L.P.R.A. § 1855.

El inciso (b) disponía que A.S.A. (ahora ASDA) podría celebrar acuerdos para cumplir los fines impuesto en la ley. Sin embargo, la propia ley dispuso que: "cualquier cambio en las normas, acuerdos y contratos que se establezcan y que conlleven erogaciones futuras de fondos deberán tener la aprobación previa del Secretario o del funcionario en que éste delegue". Esto demuestra el control absoluto que tiene el Secretario de Agricultura sobre la agencia.

El hecho de que las deudas y obligaciones de A.S.A. no constituyeran deudas u obligaciones del Estado Libre Asociado de Puerto Rico parece responder, como afirma la recurrida: "a un interés apremiante de sana administración pública, donde ASDA, siendo un componente operacional del Departamento de Agricultura, cumpla con sus encomiendas dentro de los parámetros presupuestarios".

Por las razones expuestas, concluimos que ASDA es una agencia gubernamental adscrita al Departamento de Agricultura y no una corporación publica.[3] Por ende, el recurso presentado por ASDA ante el Tribunal de Circuito, para revisar la sentencia dictada por el Tribunal de Primera Instancia, se presentó dentro del término correspondiente.

VI

Una vez determinado que el Tribunal de Circuito de Apelaciones tenía jurisdicción para atender el recurso presentado, nos resta determinar si dicho foro erró al revocar la sentencia dictada por el Tribunal de Primera Instancia.

La vista en el caso de autos se celebró en ausencia de ASDA debido a que la resolución del Tribunal de Primera Instancia, en la cual se

---

[3] Valga aclarar que no llegamos a esta conclusión por el mero hecho de que ADSA este adscrita al Departamento de Agricultura, pues una corporación pública no deja de ser tal por estar adscrita a un Departamento gubernamental. Véase, Pagan v. E.L.A., 131 D.P.R. 795, 807 (1992)y Huertas Alicea v. Compañía de Fomento Recreativo, *supra*.

aceptó la renuncia del abogado de ASDA y se indicó la vigencia del señalamiento para la vista en su fondo, no fue notificada a la agencia.

Independientemente de si fue o no correcto calificar la referida vista como una en rebeldía, este Tribunal ha indicado que existe una política judicial de que los casos se ventilen en sus méritos. Véase, Mercado v. Panthers Military, 125 D.P.R. 98 (1990); Echevarría Jiménez v. Sucn. Pérez Meri, 123 D.P.R. 664 (1989); Maldonado v. Srio. de Recursos Naturales, 113 D.P.R. 494 (1982) y; Acevedo v. Compañía Telefónica de Puerto Rico, 102 D.P.R. 787 (1974).

De los autos surge que la referida moción de renuncia especificó que toda notificación futura relacionada a ASDA fuera enviada a su administrador. Sin embargo, a pesar de autorizarse la renuncia, dicha resolución no fue notificada a ASDA.

Coincidimos con el Tribunal de Circuito a los efectos que el foro de instancia debió notificar dicha resolución a ASDA y apercibirle de las consecuencias de la no comparecencia. Sólo luego de esto podía celebrarse la referida vista. ASDA desconocía de la resolución y había levantado como defensa un relevo de responsabilidad firmado por Ghigliotti, además de un informe donde éste aceptaba los servicios realizados por ASDA.

Por ende, procede que se confirme la Sentencia dictada por el Tribunal de Circuito de Apelaciones y se devuelva el caso al Tribunal de Primera Instancia para que continúen los procedimientos en forma consistente con lo aquí resuelto.

Se dictará la Sentencia correspondiente.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis Ghigliotti Arzola

   Demandante y Peticionario

     v.                                    CC-1998-734    Certiorari

Administración de Servicios
Agrícolas

   Demandado y Recurridos


SENTENCIA

San Juan, Puerto Rico, a 30 de diciembre de 1999.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte integral de la presente, se expide el auto de certiorari y se confirma la Sentencia emitida por el Tribunal de Circuito de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos en forma consistente con lo aquí resuelto.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri disintió sin opinión escrita.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo